USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 5/27/11

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

---

DENIS DUKOV and STEPHANIE NELSON,
Individually and on Behalf of All Others Similarly
Situated

                                        Plaintiffs,

    - against -

GINZA 1, LLC, GINZA 2, LLC, GINZA 3, LLC,
GINZA 4, LLC, GINZA 5, LLC, GINZA 6, LLC,
GINZA MANAGEMENT, LLC, GINZA
PROJECT, LLC, MARI VANNA, VICTORIA
NATOVICH, TATIANA B. BRUNETTI and
JOHN DOES #1-10 Jointly and Severally,

                                        Defendants.

**ECF Case**

**No. 10-CV-1647 (SHS)**

---

## [PROPOSED] ORDER GRANTING FINAL  *SHS*
## APPROVAL OF CLASS ACTION SETTLEMENT
*and of the request for attorney's fees and expenses and service awards*

The above-captioned matter came before the Court on Plaintiffs' Motion for Final
Approval of Class Action Settlement (the "Motion for Final Approval").

The above-captioned action was commenced by servers, bartenders and bussers at Mari
Vanna, a restaurant that specializes in traditional Russian cuisine, located at 41 East 20th Street in
the Gramercy neighborhood of Manhattan.  Defendants are the following corporate entities
through which the Mari Vanna restaurant is owned and operated — Ginza 1, LLC, Ginza 2,
LLC, Ginza 3, LLC, Ginza 4, LLC, Ginza 5, LLC, Ginza 6, LLC, Ginza Management, LLC and
Ginza Project, LLC ("Corporate Defendants") — and individuals responsible for the
management of the restaurant — Victoria Natovich and Tatiana Brunetti (the "Individual

Defendants" and, collectively with the Corporate Defendants, the "Defendants" or "Mari Vanna").

On or about March 2, 2010, the Class Representatives filed a Class and Collective Action Complaint (the "Action") alleging, among other things, that Plaintiffs and other similarly situated current and former wait staff who were employed by Defendants at any time since March 1, 2004[1], to the entry of judgment in this case (the "Class Period") and who were non-exempt employees within the meaning of the New York Labor Law (the "Settlement Class Members") are entitled to unpaid wages, minimum wages and/or overtime wages, and reimbursement of illegal payroll deductions and/or gratuities withheld, in violation of federal and state law. Plaintiffs asked that this Action be certified as a class and collective action pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201, et. seq. ("FLSA") and Fed. R. Civ. P. 23. Plaintiffs' claims under the FLSA were brought pursuant to 29 U.S.C. §216(b) and Plaintiffs' state law claims pursuant to Fed. R. Civ. P. 23.

The Parties began engaging in intensive settlement negotiations immediately after Plaintiffs filed their Action. The Parties engaged in numerous teleconferences and informal document production during the pendency of these settlement negotiations. To foster an environment conducive to good-faith settlement negotiations, the Parties entered into a Protective Order that was So Ordered by the Court.

In furtherance of the settlement negotiations, Defendants agreed to produce to Plaintiffs' Counsel an analysis of their time and payroll records which demonstrated the Settlement Class Members' hours worked and rates of pay. Following Plaintiffs' Counsel's review of Defendants'

---

[1]     While the NYLL and FLSA class periods extend from March 1, 2004 through July 21, 2010, for settlement purposes, the parties agreed-to Class Period is from the opening of Mari Vanna in August 2009 through March 1, 2010.

documents and analysis, Plaintiffs' Counsel prepared its own analysis of Defendants' time and payroll records, and produced their own clock-in reports and pay records in support of their claims.   The Parties continued to hold regular teleconferences to discuss the merits of the Plaintiffs' and the Settlement Class Members' procedural and substantive claims.

During the settlement negotiations, Defendants argued that Plaintiffs' Counsel and the Plaintiffs overestimated the number of Settlement Class Members, overestimated the number of hours worked by the Plaintiffs and the Settlement Class Members and incorrectly characterized Defendants' payroll and time keeping policies.   Contrarily, Plaintiffs' Counsel argued that Defendants records under-reported the hours that its employees worked.

Ultimately, the Parties reached an agreement to settle the Action ("Settlement Agreement")[2], pending this Court's approval, on or around July 14, 2010.   After revisions to the Settlement Agreement and Motion for Preliminary Approval materials, the Parties submitted their Motion for Preliminary Approval of Settlement on January 11, 2011, with a supplementary declaration in support of the Motion on February 4, 2011.   On February 8, 2011, the Court entered an Order preliminarily approving the Settlement and authorizing dissemination of notice and correspondence regarding anticipated recovery (the "Notice Packets")[3] to the Rule 23 Class. The Notice informed Class members of their preliminary settlement amount, described the manner in which this award was computed, stated Class Counsel's intent to seek the payment of Service Awards to both of the named plaintiffs, and to seek attorneys' fees amounting to one-third of the Settlement, and informed the Class Members of their right to object to the Settlement

---

[2] A copy of the Settlement Agreement has been previously submitted to the Court in the parties' Motion for Preliminary Approval of Settlement materials, and is attached as Exhibit "B" to the Pelton Declaration in Support of Plaintiffs' Motion for Approval of Attorneys' Fees, Reimbursement of Expenses and Approval of Service Awards, submitted contemporaneously herewith.

[3] The Court-approved "Notice," consisted of two separate documents: a Notice of Proposed Settlement and a Letter Regarding Anticipated Recovery.

or to opt-out of the Settlement.   No Class Members have exercised their right to opt-out of the Settlement, and as of this date, no Class Members have objected to the settlement.

Based upon an examination of the Settlement Agreement between named plaintiffs Denis Dukov and Stephanie Nelson (collectively, "Plaintiffs"), on the one hand, and Ginza 1, LLC, Ginza 2, LLC, Ginza 3, LLC, Ginza 4, LLC, Ginza 5, LLC, Ginza 6, LLC, Ginza Management, LLC and Ginza Project, LLC. Mari Vanna, Victoria Natovich and Tatiana Brunetti (collectively, "Defendants") on the other hand, and upon an examination of the Motion For Final Approval of the Class Action Settlement (the "Final Approval Motion"), the Declaration of Brent Pelton in Support of Final Approval of the Class Action Settlement, the oral arguments presented at the May 18, 2011 fairness hearing (the "Fairness Hearing") *at which no objector appeared* and the complete record in this matter, for the reasons set forth therein and stated on the record at the Fairness Hearing and for good cause shown,

## IT IS HEREBY ORDERED, ADJUDGED AND DECREED:

1.     The Court hereby grants the Motion for Final Approval and finally approves the settlement as set forth in the Settlement Agreement and in this Order under Rule 23 and the FLSA. The Settlement is fair, reasonable, adequate and not a product of collusion. *See* Fed. R. Civ.P.23(e), *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 184 (W.D.N.Y. 2005) (*quoting Joel A. v. Giuliani*, 218 F.3d 132, 138-39 (2d Cir. 2000)).

2.     The $56,000 settlement amount is substantial and includes meaningful payments and non-monetary consideration to Class Members.[4]   In reaching this conclusion, the Court is satisfied that the Settlement was fairly and honestly negotiated.   It was the result of *vigorous* arms-length negotiations, which were undertaken in good faith by counsel with *extensive*

---

[4]  This settlement includes employees who worked in covered positions through March 1, 2010, or approximately eight (8) months after the opening of Mari Vanna *in August, 2009*.

experience in litigating wage and hour class actions, and serious questions of law and fact exist such that the value of the instant recovery outweighs the mere possibility of further relief after protracted and expensive litigation. *See D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001).

3.     The parties' judgment that the Settlement is fair and reasonable, as well as the ~~in that no class member filed any objection or opted out,~~ *SHS*

Class's favorable response to the Settlement weigh in favor of final approval of the Settlement.

4.     Since granting preliminary approval of the Settlement on February 8, 2011, Class Counsel, serving as the Settlement Administrator, retained Simpluris, Inc. ("Simpluris") to conduct the mailing of the settlement Notice Packets approved by this Court to the members of the Settlement Class. On March 7, 2011, Simpluris sent notice to 36 current and former Mari Vanna employees. Nine notice packets were returned by the post office and, after performing skip trace services, Simpluris re-mailed five Notice Packets. Only five Notice Packets were undeliverable. Simpluris received no opt-out requests from potential Class Members and to date, no Class Members have objected to the Settlement.

5.   The Court finds that the proposed Class described above satisfied the following factors of Rule 23(a) and Rule 23(b)(3):

a.  NUMEROSITY:     The Court finds that the proposed Settlement Class is sufficiently numerous such that individual joinder of all its members is impracticable because there are 37 individuals asserting class claims.     Thus, the Rule 23(a)(1) numerosity requirement has been met.

b.  COMMONALITY/PREDOMINANCE:     The Court finds that there are ~~many~~ *SHS* questions of law and fact common to the Settlement Class and that those questions

substantially predominate over any questions that may affect individual Class members and satisfy Rules 23(a)(2) and 23(b)(3).

c. <u>TYPICALITY</u>:       The Court finds that the proposed Class Representatives' claims arise from substantially the same course of conduct and share substantially the same legal theory as do the claims of the putative Class members. Furthermore, the proposed Class Representatives will advance the interests of all class members. The proposed Class Representatives' claims are thus typical of the claims of the members of the Class and satisfy Rule 23(a)(3).

d. <u>ADEQUACY</u>:       The Court finds that the proposed Class Representatives assert claims representative of the claims of the entire class. Even though the claims may not be identical to claims of every putative Class member, the proposed Class Representatives can adequately represent the putative Class because the Class Representative claims include virtually all of the most viable claims of the Class. The adequacy factor also considers Class Counsel. In this case, Class Counsel regularly engage in ~~class action~~ litigation similar to the present case and have dedicated ~~substantial~~ *SHS* resources to the prosecution of this matter. The adequacy requirement is, therefore, satisfied.

e. <u>SUPERIORITY</u>:       A settlement class that will determine the issues common to all Class members and fix compensation for injury is superior to numerous trials that would risk disparate results for similarly situated individuals. The cost of litigation on a case-by-case basis would be extremely costly for each Plaintiff and the putative Class members, and piecemeal litigation would tax the resources of the judiciary.

Accordingly, the Court finds that a class action is superior to other available methods for the fair and efficient adjudication of the present controversy.

6.      The Settlement shall be effective (the "Effective Date") thirty days after entry of this Order if no appeal is taken of this Order.  If an appeal is taken in this matter, the Effective Date shall be thirty days after the appeal is withdrawn or after an appellate decision affirming this final approval decisions becomes final.

7.      Upon the Effective Date of the Settlement, each Class Member who has not opted out of the Settlement shall have released all claims that they may have for unpaid wages, interest, liquidated damages, and attorneys' fees and costs related to such claims against Defendants during the ~~relevant statutory~~ period *from the opening of Mari Vanna in August, 2009* through March 1, 2010, as set forth in greater detail in the Settlement Agreement.

8.      The Court also approves the FLSA settlement and finds that it is a fair and reasonable resolution of a bona fide dispute reached as a result of contested litigation.  See Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350, 1353 (11th Cit. 1982).

9.      The Court hereby grants *the motion of Pelton + Associates, PC,* Class Counsel *request* for attorneys' fees in the amount of $18,648.00 or 33% of the $56,000.00 settlement fund, plus out-of-pocket litigation costs *of $685.* This amount is to be paid from the settlement fund at the same time that settlement payments are made to Class Members.

10.     The Court finds that the amount of fees requested is fair and reasonable using the "percentage of recovery" method, which is consistent with the trend in the Second Circuit.  See, e.g., Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar, 06 Civ 4270, 2009 U.S. Dist. LEXIS 27899, at *16 (S.D.N.Y. Mar. 31, 2009); Hicks v. Morgan Stanley & Co., 2005 U.S.

7

Dist. LEXIS 24890, at *22 (S.D.N.Y. Oct. 24, 2005) ("The trend in the Second Circuit recently has been to use the percentage method.").

~~11.    Class Counsel's request for a percentage of the overall settlement fund is also consistent with the trend in the Circuit. Mohney, 2009 U.S. Dist. LEXIS 27899 at *16 (citations omitted).~~ *SHS*

12.    The attorneys' fees requested were entirely contingent upon success in this litigation. Class Counsel expended ~~significant~~ time and effort and advanced costs and expenses without any guarantee of compensation. *SHS*

13.    The Court hereby grants Class Counsel's request for reimbursement of out-of-pocket expenses in the amount of $683.00. This amount is to be paid from the settlement fund.

14.    The Court finds that an award of $2,500.00 to ~~both~~ *each* of the two named plaintiffs reasonable in light of the efforts they have expended in furthering the interests of the Class. This amount is to be paid from the settlement fund at the same time that settlement payments are made to Class Members and shall be paid to *each of* the two named plaintiffs via a Form 1099 as non-employee income. *SHS*

15.    Defendants shall issue checks, in the form of payroll checks, to each Class Member in the amount of the Class Member's Settlement payment. Defendants shall deliver the checks to Class Counsel within thirty (30) days following of the Court granting Final Approval of the Settlement Agreement. Checks will be mailed by Class Counsel to Class Members within ~~Thirty (30)~~ *forty-five (45)* ~~forty-five (45)~~ days *from* the Court granting Final Approval of the Settlement Agreement (provided there are no appeals ~~to~~ *from* any decision rendered by the Court in this Action). *SHS*

8

16.    Defendants shall make all ~~such~~ payments contemplated herein for service awards, *SKS*

attorneys' fees and costs contemporaneously with the distribution of Settlement checks to Class

Members.

17.    Class Members will have 120 days from the date of mailing to cash their

Settlement checks (the "Acceptance Period").    Class Members will be informed of the

Acceptance Period in the Notices and on the Settlement checks.  Class Counsel will also include

the following text in the Notices, in an attempt to locate the Class Members whose Notice

Packets were undeliverable:

> "Class Counsel has been unable to locate the following individuals, who are owed money
> from this Settlement: Sereda Stanislav, Aminio Abderrazek, Aleksandra Gorvat, Sokha
> Volodymyr, and Artem Monzha.  If you have any information regarding the address,
> phone number or other contact information for any of these Class Members, please
> contact Class Counsel via telephone at: (212) 385-9700, via fax at: (212) 385-0800, or via
> email at: pelton@peltonlaw.com. Thank you for your assistance in locating these Class
> Members."

18.    Settlement checks returned to the Settlement Administrator shall be re-mailed

using commercially accepted address verification methods.    Defendants shall provide Class

Counsel with a list of all Settlement Class Members who have not cashed their Settlement Check

within the Acceptance Period.  In such event, Class Counsel will have another 120 days to

request a replacement check.

19.    Defendants shall not make any statements or in any way discourage Class

Members from participating in the Settlement, including but not limited to discouraging Class

Members from cashing their Settlement checks.

20.    Upon the Effective Date of this settlement, this action shall be dismissed with

prejudice.

9

21.    This Court shall retain jurisdiction over this Action and, in the event that Defendant defaults in its payment obligations hereunder or engages in any activity designed to discourage Class Members from cashing their Settlement Checks, Class Counsel may submit a letter explaining the default and seeking that the Court enforce the default provision contained in the Settlement Agreement or otherwise cure the default.

22.    The Clerk of the Court is directed to close this case without further order of this Court fifteen days after entry of this Order.

ORDERED this 26 day of May , 2011.

_____
The Honorable Sidney H. Stein, U.S.D.J.

10